Shanin CHOWDHURY; Daisy Chow-
dhury; Shanjana Chowdhury,
Petitioners,

v.

IMMIGRATION AND
NATURALIZATION SERVICES,
Respondent.

No. 01–71437.
INS No. A70–926–083, A70–
926–084, A70–926–085.

United States Court of Appeals,
Ninth Circuit.

Submitted July 12, 2002.*

Decided Aug. 2, 2002.

Before NOONAN, WARDLAW and
BERZON, Circuit Judges.

MEMORANDUM **

Shanin Chowdhury petitions for review
of the Board of Immigration Appeals'
("BIA") dismissal of his application for
asylum and withholding of deportation.
Chowdhury's wife and minor daughter are
derivative applicants whose petitions de-
pend exclusively on the merits of Chow-
dhury's petition. We have jurisdiction un-
der 8 U.S.C. § 1105a(a), *Kalaw v. INS*,
133 F.3d 1147, 1150 (9th Cir.1997), and we
grant the petition.

Chowdhury argues that substantial evi-
dence does not support the BIA's indepen-
dent adverse credibility finding that his
testimony was inconsistent. We agree.
The BIA found that Chowdhury failed to
adequately explain: 1) internal inconsis-
tencies in his testimony regarding the rea-
sons why and time periods during which

---

* This panel unanimously finds this case suit-
able for decision without oral argument. See
Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publi-
cation and may not be cited to or by the
courts of this circuit except as may be provid-
ed by Ninth Circuit Rule 36–3.

authorities searched for him; and 2) a seeming inconsistency in his brother's letter concerning when his theater was destroyed. The BIA erred as a matter of law in concluding that these seeming inconsistencies undermined Chowdhury's asylum claim.

Extensive uncontested evidence confirms Chowdhury's core story that he was persecuted by members of the Bangladesh National Party ("BNP"). First, an affidavit from the Vice Chairman of the Jatiyo Party states that Chowdhury was a "renown member of Jatiyo Party," and that "for his political belief," Chowdhury "has been tortured and persecuted by Bangladesh National Party." Second, newspaper articles verify Chowdhury's testimony that armed "miscreants" beat him on March 25, 1992, that "rice traficking" preceded the murder of Chowdhury's friend, Malek, in April, and that his theater was destroyed on May 1, 1992. Finally, a notarized affidavit from Malek's brother states that BNP members forced him to file a false murder charge against Chowdhury.

In right of this independent evidence, the inconsistencies in Chowdhury's testimony appear to be "[m]inor inconsistencies in the record such as discrepancies in dates which reveal nothing about an asylum's credibility finding." *Shah v. INS,* 220 F.3d 1062, 1068 (9th Cir.2000). Moreover, much of the purported inconsistency results from taking quotations of the transcript out of context. The BIA complains, for example, that Chowdhury stated in one hearing that the police were looking for him because he was falsely accused of Malek's murder and in another hearing that the police were looking for him because he was "trying to stop" the "BNP people." In fact, there is no inconsistency between the transcripts of the two hearings on this point. The entire story about Malek, which the BIA cites from the first

hearing, was a part of Chowdhury's attempts to "stop" the BNP's stealing of flood relief provisions. Moreover, Chowdhury *did* discuss the Malek episode in detail later in the second hearing. Chowdhury's story there is the same as at the first hearing. Finally, the murder of Malek and the accusation of Chowdhury are independently reported in a newspaper article included in the record.

We have held that "[i]f discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility." *Id.* at 1068. None of the purported inconsistencies appears to be an effort to enhance Chowdhury's claim of persecution. Meanwhile, Chowdhury's core story, when read in context, is both internally consistent and consistent with the extrinsic evidence. Because we reject the BIA's adverse credibility determination and find Chowdhury credible, we conclude that substantial evidence does not support the BIA's denial of asylum. *See INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

■ To qualify for asylum, Chowdhury must demonstrate persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *See Elias–Zacarias,* 502 U.S. at 481–82. Chowdhury testified that he and members of his family suffered incarceration, police beatings, and assaults by BNP members because of their political beliefs. Thus, we find that Chowdhury has established past persecution, *see Gui v. INS,* 280 F.3d 1217, 1228–30 (9th Cir.2002), and is therefore entitled to the legal presumption that he has a well-founded fear of future persecution. *See Borja v. INS,* 175 F.3d 732, 737–38 (9th Cir.1999) (en banc).

■ While asylum is discretionary, a petitioner is entitled to withholding of depor-

tation if the evidence demonstrates a clear probability that the applicant would be persecuted were he to be deported to his home country. *See Ladha v. INS,* 215 F.3d 889, 897 (9th Cir.2000). Although Chowdhury's fear is well-founded, we cannot say that it is more likely than not that he will be persecuted based on his political beliefs should he return to Bangladesh. We therefore deny his request for withholding of deportation. *See Gui,* 280 F.3d at 1230.

Chowdhury is eligible for asylum. We remand to the BIA for an exercise of discretion by the Attorney General with respect to whether Chowdhury's asylum request should be granted, but deny his request for withholding of deportation.

**GRANTED.**